IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENISE DANIELS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-4240 |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI[1], | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                   April 29, 2022

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Denise Daniels ("Daniels" or "Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 12); Defendant's Response to Request for Review of Plaintiff ("Def. Br.") (Doc. 15); Plaintiff's Reply Brief ("Pl. Reply Br.") (Doc. 16); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 11) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ. The Commissioner seeks the entry of an order affirming that decision. For the reasons set forth below, we grant the request for review and remand for further consideration.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, therefore, she should be substituted for Andrew Saul as Defendant in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

I.      **FACTUAL AND PROCEDURAL HISTORY**

Daniels filed her claims for DIB and SSI on June 15, 2017, asserting a disability from that same date. In her initial filings to the state agency, she reported that she suffered from a "heart problem," diabetes, high blood pressure, and low potassium. (R. 55-56). The applications for DIB and SSI were denied, with the state agency finding that Daniels could return to past relevant work as a shipping supervisor. (R. 75, 80).

She then requested a hearing before an ALJ, which took place December 3, 2018. The ALJ took testimony from Daniels regarding her medical history, including knee pain, headaches, and cardiac issues. (R. 33-42). She also questioned Daniels about her weight, including whether Daniels had spoken to her doctor about it. (R. 38). Near the conclusion, a vocational expert testified that Daniels' prior work was "light per the [Dictionary of Occupational Titles]; heavy, as she described her job duties." (R. 50).

In a decision dated April 4, 2019, the ALJ determined that the Daniels was not disabled, finding she could return to her past relevant work. (R. 16). The Appeals Council declined review, rendering the ALJ's decision of April 4, 2019 the Commissioner's final determination.

II.     **STANDARD OF REVIEW**

This Court must determine whether the ALJ's conclusion that Daniels can perform past relevant work is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402

U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

### III.  DECISION UNDER REVIEW

The issue before the ALJ at the December 3, 2018 hearing was whether Daniels was disabled under the relevant sections of the Act. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) and concluded that she was not disabled.

At Step One, she found that Daniels had not engaged in substantial gainful activity since the alleged onset date of June 15, 2017. At Step Two, the ALJ determined that Plaintiff's "status post heart attack with atherosclerosis of coronary artery, hypertension, obesity, obstructive sleep apnea, and diabetes mellitus" constituted severe, medically determinable impairments. (R. 12).

At Step Three, however, the ALJ found that Daniels had no impairment or combination of impairments which satisfied one of the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ reviewed the impairments that she described in Step Two, given the relevant listings. (R. 13). Specifically, she analyzed those listings relevant to Daniels' ischemic heart disease, hypertension, diabetes and discussed how the record and medical evidence belied a finding that Daniels met each listing. (*Id.*) The ALJ then noted that although Daniels had a diagnosis of obesity, she had not been under a specific treatment plan aside from diet and exercise, and she raised "no complaints of problems stemming from obesity either alone or in combination with the claimant's other impairments." (R. 14).

The ALJ then considered Plaintiff's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [her] limitation," 20 C.F.R. § 416.945(a)(1), finding that Daniels "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." *Id*. The ALJ began the RFC analysis by describing

Plaintiff's testimony that she had mobility issues affecting her knees, shortness of breath, a history of three heart attacks, chest pain, headaches from hypertension, and sleep apnea, but also that she "does not use a CPAP machine" and is "able to do her laundry." (R. 15).

Turning to the medical evidence, however, the ALJ found that while Plaintiff's impairments could reasonably be expected to cause some symptoms, the record did not demonstrate that her symptoms were of such intensity, persistence, or effect that they warranted a more restrictive RFC than the one assigned. (R. 15-16). The ALJ specifically noted that although Daniels went to the hospital several times during the period of alleged disability, her cardiac symptoms and diabetes were under control, and her sleep apnea was mild. Obesity was not mentioned in the RFC analysis, either alone or together with another impairment. The ALJ at Step Four found Daniels capable of performing past relevant work as a shipping supervisor, noting that this conclusion was based on a comparison of "the claimant's residual functional capacity with the physical and mental needs of this work." (R. 16). Accordingly, Daniels was determined to be not under a disability as defined by the Act.

## IV. DISCUSSION

Daniels argues that remand is required because when considering her RFC, the ALJ failed to assess the effects of her obesity combined with her other impairments as required by Social Security Ruling (SSR) 02-1p.[2] That Ruling requires an ALJ to consider the effects of obesity on a claimant's other severe and non-severe impairments throughout the evaluation process. Despite naming obesity as a severe impairment at step two and recognizing Daniels' knee impairment, the

---

[2] SSR 02-1p has been rescinded and replaced by SSR 19-2p, which became effective May 20, 2019. 84 Fed. Reg. 22924, 22924 (May 20, 2019). However, SSR 02-1p was still in effect on the date of the Commissioner's final decision and is the ruling applicable to this case. *Id.* at n. 14 ("[w]e expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

ALJ failed to indicate whether or to what extent the interaction of the two affected her RFC analysis. We conclude that the ALJ erred in failing to adequately discuss the basis for Plaintiff's RFC and the ALJ's subsequent determination that Daniels could return to past relevant work.

SSR 02-1p describes how obesity is to be considered in disability claims. It instructs that a listing may be met if a claimant's obesity in combination with another impairment meets the requirement of a listing:

> For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

SSR 02-1p, 2002 WL 34686281, at *5. Specifically, the Ruling states that in the sequential evaluation process, obesity will be considered in determining whether (1) the claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals an impairment in the listing, and (4) the individual's impairment or impairments prevent them from doing past relevant work. *Id.* at *3.

Plaintiff asserts that the ALJ committed reversible error in assessing her RFC, citing to *Diaz v. Commissioner of Social Security*, 577 F.3d 500 (3d Cir. 2009). (Pl. Br. at 5). In *Diaz*, the Third Circuit vacated a district court decision affirming the Commissioner's determination that the claimant was not disabled. The court found that the ALJ failed to consider at steps three and four the effect of obesity combined with the claimant's other impairments despite having recognized obesity as a severe impairment at step two. The Third Circuit also analyzed the relevance of SSR 02-1p, concluding that despite the removal of an obesity-specific listing, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three *and at every subsequent step.*" *Diaz*, 577 F.3d at 504 (emphasis added).

The Commissioner claims that the ALJ appropriately considered Plaintiff's obesity in combination with her impairments and that her RFC determination was properly assessed. According to the Commissioner, the present case differs from *Diaz* in that "there was discussion beyond merely finding obesity to be a severe impairment – both at step three and in the RFC analysis." (Def. Br. at 9).[3] The Commissioner suggests that this is sufficient given that Daniels made no specific complaint in her testimony or otherwise regarding the effects of obesity on her other impairments. (Def. Br. at 5-6). As the Third Circuit stated in *Diaz*, however, the notion that a claimant's obesity can exacerbate joint dysfunction may be apparent "as a matter of common sense, if not medical diagnosis." 577 F.3d at 504. Furthermore, an ALJ's articulation of the reasoning behind a hearing decision is subject to the requirement that it be sufficient to provide for meaningful judicial review. *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). This standard "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). However, the ALJ's analysis must reflect consideration of the objective medical evidence and relevant testimony.

---

[3] After identifying obesity as a severe impairment at step two, the ALJ does indeed discuss the same at step three:

> The claimant has been diagnosed with obesity with a BMI of 42.44. The claimant has not been prescribed a specific treatment plan beyond diet and exercise, and [there were] no complaints of problems stemming from obesity either alone or in combination with the claimant's other impairments.

(R. 14) (citations omitted). Aside from her identification of the impairment at step two, however, this is the only time that the ALJ directly addresses Daniels' obesity or BMI.

6

Looking to the RFC discussion in the hearing decision, the ALJ did not sufficiently address the interaction between Plaintiff's obesity and knee impairments, either directly or indirectly through a discussion of the objective medical evidence. This was an error in light of the Third Circuit's conclusion that the effects of obesity receive meaningful consideration "at step three and at every subsequent step," including the RFC analysis. *Diaz*, 577 F.3d at 504. Daniels' weight and knee problems were raised at her hearing, her knee pain was referenced in the medical evidence, and the ALJ herself noted that obesity was a severe impairment at step two—all factors which should have been discussed in the hearing decision.

Characterizing Daniels' assertions on that issue as "speculation," the Commissioner argues that remand is not appropriate "where there is no medical evidence that Plaintiff's obesity caused any functional imitations beyond those assessed in the RFC." (Def. Br. at 6). True speculation regarding a claimant's obesity cannot for the basis for remand. As stated in SSR 02-1p, the agency "will not make assumptions about the severity or functional effects of obesity combined with other impairments" but instead will "evaluate each case based on the information in the case record." This evidence-based evaluation is precisely what the ALJ did regarding Daniels' cardiovascular issues. For example, the ALJ describes Daniels' coronary artery catheterization and subsequent therapeutic trajectory, concluding that despite a BMI of 42.43, "her cardiac symptoms remain controlled." (R. 15).

The ALJ did not make such an assessment regarding Daniels' knee impairments. The Commissioner in her brief asserts that this was because there was no evidence that the conjunction of Plaintiff's obesity and knee issues affected her functional ability beyond that which was accounted for in the RFC. (Def. Br. at 8). An ALJ must consider all medically determinable impairments when establishing the RFC. 20 C.F.R. § 404.1520(e). There was both medical

evidence and testimony from Daniels about her knee, neither of which were meaningfully addressed in the ALJ's RFC analysis. Given that the issue is the absence—not insufficiency—of discussion on this impairment, adopting the conclusion posited by the Commissioner at this stage risks performing an independent, post hoc analysis of evidence before the ALJ, a task that this Court cannot undertake. *See Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (quoting *SEC v. Chenery Corp.*, 318 U.S 80, 87 (1943)). Rather, the appropriate remedy is remand.

It is true, as the Commissioner implies, that a court "cannot remand the ALJ's decision based on the failure to confront evidence that does not exist." *Suarez v. Astrue*, 996 F. Supp. 2d 327, 333 (E.D. Pa. 2013) (quoting *Neff v. Astrue*, 875 F.Supp.2d 411, 423 (D. Del. 2012)). Here, however, there is evidence which can and must be confronted on remand. The ALJ's RFC finding does not mention, for example, the treatment that Daniels received from Dr. Arsh Dhanota for her bilateral chronic knee pain. (R. 661–69). This included an assessment of bilateral primary osteoarthritis of the knee and injections for pain. Dr. Dhanota's record explicitly mentions obesity, noting that it might impair healing and recommending weight loss via dietary changes. (R. 668). This evidence, however, was not discussed in the RFC analysis, either alone or in conjunction with obesity.

There is also no discussion in the RFC analysis—alone or given potential exacerbation by obesity—about how Daniels' testimony regarding her pain or knee mobility factored into the two-step evaluation described in SSR 16-3p. When evaluating subjective complaints, the ALJ must first determine whether a medically determinable impairment exists which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §404.1529(a). If such an impairment exists and is consistent with the record, the ALJ must then evaluate the intensity and persistence of

subjective symptoms to determine if they produce any functional limitation. 20 C.F.R. § 404.1529(c).

Here, the ALJ notes that Daniels testified that in addition to having chest pain, shortness of breath, and sleep apnea, she had "difficulty bending her knees" and used "a non-prescribed cane." (R. 14). The ALJ then discussed the medical evidence and treatment records related to Daniels' cardiovascular ailments, diabetes, and obstructive sleep apnea, determining that all were controlled and did not warrant limitations greater than those assigned in the RFC. (R. 15). Neither the ALJ's review of medical evidence, nor her conclusion that the RFC reflected Daniels' symptoms being mild, mentioned knee pain, obesity, or their combined effects.

We accept that it might be the case that Daniels' knee issues were not severe enough to affect the ALJ's RFC calculus. An ALJ's reasoning for such a conclusion need not be of great depth, as "<u>any</u> discussion of the combined effects" of obesity and Daniels other impairments would likely suffice. *Diaz*, 577 F.3d at 504 (emphasis in original). However, given that the relevant aspects of medical and testimonial evidence were not referenced in the RFC discussion, we are left "to wonder whether [the ALJ] considered and rejected them, considered and discounted them, or failed to consider them at all." *Fargnoli*, 247 F.3d at 44. While no joint disorder was identified at step two of the disability analysis, obesity was, and at any rate, the ALJ was obligated to consider all medically determinable impairments when establishing the RFC. 20 C.F.R. § 404.1520(e). As the ALJ's decision did not include the required discussion regarding Plaintiff's knee impairments and obesity, remand is necessary for consideration of this aspect of Plaintiff's claim.

## V. CONCLUSION

SSR 02-1p requires an ALJ to consider the interaction between a claimant's obesity and her other impairments throughout the disability evaluation process, including the RFC analysis. While the ALJ's reasoning need not be exhaustive, it must be clearly expressed so that a reviewing court may fulfill its obligations under 42 U.S.C. § 405(g). As the ALJ in this case did not sufficiently note such an intersectional analysis, the remedy is remand.

An appropriate order will follow.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE
